ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MAR 0 2 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

| | |
|---|---|
| VIGILANT INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TURNER BROADCASTING | ) |
| SYSTEM, INC., HI-TECH FX LLC and | ) |
| INTERIOR FIRE PROTECTION, INC., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION FILE

NO. **1  10-CV-0592**

**-RLV**

**COMPLAINT FOR PROPERTY DAMAGE
AND DEMAND FOR JURY TRIAL**

Plaintiff Vigilant Insurance Company ("Vigilant") sues Turner Broadcasting

System, Inc. ("TBS"), Hi-Tech FX LLC ("Hi-Tech") and Interior Fire Protection,

Inc. ("Interior") as follows:

**The Parties, Jurisdiction and Venue**

1.

Plaintiff Vigilant is an insurance company lawfully doing business in the

State of Georgia.  Vigilant is incorporated in New York and its principal place of

business is in New Jersey.

2.

Defendant TBS is a Georgia corporation with its principal place of business in Georgia. TBS may be served with process by service upon its registered agent: CT Corporation System, 1201 Peachtree Street, Atlanta, GA 30361.

3.

Defendant Hi-Tech is an Iowa corporation with its principal place of business in Iowa. Hi-Tech may be served with process by service upon its registered agent: Mark R. Johnson, 1135 Avenue I, Fort Madison, IA 52637.

4.

Interior is a Georgia corporation with its principal place of business in Georgia. Interior may be served with process by service upon its registered agent: Cheryl V. Shaw, 400 Northridge Road, Suite 700, Atlanta, GA 30350.

5.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## Allegation of Facts

7.

This case arises from a fire that occurred on or about December 19, 2008, at a movie production facility in the Atlanta area owned by Production Consultants, LLC, d/b/a Production Consultants & Equipment, or PC&E.

8.

Vigilant provided property insurance to PC&E and indemnified PC&E in the amount of $1,871,508.60 for its losses arising from the fire.

9.

The fire occurred in a PC&E sound stage being used by Defendant TBS on December 19, 2008, to film a "SpongeBob" production.

10.

TBS and its employees and contractors had exclusive possession, custody, and control of PC&E's sound stage during the filming of the SpongeBob production.

11.

The production called for the use of pyrotechnics to create a fireworks background for the production.

12.

TBS hired Defendant Hi-Tech to create the pyrotechnic display.

13.

TBS filmed the sequence involving the SpongeBob character and the pyrotechnic display on December 19, 2008, and left the facility sometime after 5:00 p.m.

14.

TBS and its employees and contractors were the last persons to exit the sound stage on the evening of December 19, 2008.

15.

On Sunday morning, December 21, 2008, a PC&E employee remotely logged into the PC&E video surveillance system and saw smoke inside the facility.

16.

The employee immediately responded and found smoke in the PC&E facility, fire suppression sprinkler heads discharging water over the remains of an

4

extinguished fire in the sound stage vacated by Defendant TBS the previous Friday, and several inches of water throughout a significant portion of the facility.

17.

Although the local, mechanical water gong had activated, the electrical alarm system had not activated, and no alarm signal had been transmitted to PC&E's alarm service. As a consequence, the sprinklers had run for an extended period of time after extinguishing the fire, causing extensive water damage to PC&E's facilities, equipment, and business.

18.

The electrical alarm did not activate because the water flow switch on the sprinkler pipe serving the sound stage was inoperable. Because of its inoperable condition, it did not transmit a signal to PC&E's central alarm panel when water flowed through the pipe to the sprinkler heads in the sound stage.

19.

The last annual inspection of PC&E's sprinkler system was conducted by Defendant Interior, on January 2, 2008. At the time of its January 2, 2008, inspection, Interior provided a written report to PC&E showing that the entire sprinkler system, including its water flow switches, was in good condition with no deficiencies.

20.

A true and correct copy of Interior's January 2, 2008, report of its inspection of PC&E's sprinkler system is attached to this Complaint as Exhibit "A."

21.

Vigilant's investigation determined that the fire was caused when material ejected from the pyrotechnics used by Defendant Hi-Tech became lodged in the sound deadening cellulose insulation covering the walls of the sound stage.

22.

The fire smoldered under the cellulose insulation for an undetermined time, but at least for several hours, before breaking into open flame.

23.

Once the fire broke into open flame, it was extinguished by the automatic fire protection sprinkler system in the sound stage.

24.

The activation of the sprinkler system should have immediately activated the electrical fire alarm system installed on PC&E's premises.

25.

Because of the inoperable condition of the water flow switch installed on the sprinkler pipe protecting the sound stage, the electrical alarm did not activate.

6

26.

Because Defendant Interior failed to detect the inoperable condition of the water flow switch during its last inspection, PC&E was unaware that its alarm would not activate as intended when the sprinkler system activated.

27.

Because of the lack of an alarm signal, the sprinkler system continued to discharge water for an extended period of time after extinguishing the fire in the sound stage. As a result, PC&E suffered extensive water damage, in addition to the damage caused by fire and smoke.

28.

Vigilant has indemnified its insured PC&E for its damages arising from this incident and is subrogated to all rights of actions against those parties responsible for its losses, to the extent of its indemnification.

## COUNT I – TBS – STRICT LIABILITY

29.

The employment by Defendant TBS of pyrotechnics within PC&E's sound stage constituted an abnormally and inherently dangerous activity.

7

30.

Defendant TBS's use of the pyrotechnics directly and proximately caused the fire in PC&E's sound stage and all resulting damages.

31.

Defendant TBS is strictly liable to PC&E and Vigilant for damages in the amount of $1,871,508.60 arising from its use of pyrotechnics in PC&E's sound stage.

## COUNT II – TBS – NEGLIGENCE

32.

Defendant TBS owed to PC&E the duty to use reasonable care in its use of PC&E's sound stage in order to avoid creating an unreasonable risk of harm to PC&E.

33.

TBS breached the duty it owed to PC&E in one or more of the following particulars:

A. Failing to use reasonable care while engaged in the inherently dangerous activity of employing pyrotechnics inside PC&E's sound stage;

8

B.     Failing to ensure that pyrotechnics were discharged a safe distance from the walls of the sound stage;

C.     Failing to ensure that no hazards remained from the use of the pyrotechnics before departing PC&E's sound stage on December 19, 2008; and

D.     Other acts or omissions as discovery may reveal.

34.

As a direct, proximate, and foreseeable result of Defendant TBS's breach of duty and negligence, PC&E and Vigilant have suffered damages in the amount of $1,871,508.60.

## COUNT III – TBS – BREACH OF CONTRACT

35.

TBS used PC&E's sound stage pursuant to a contract governed by written terms and conditions provided to TBS prior to its use of the sound stage.  A true and correct copy of those terms and conditions is attached hereto as Exhibit "B."

36.

The contract between PC&E and TBS imposed upon TBS the implied duty to perform its part of the contract in a good, professional, workmanlike, and non-negligent manner.

9

37.

Defendant TBS breached its implied duties under the contract by:

A.  Employing pyrotechnics in an unsafe manner within PC&E's sound stage;

B.  Failing to ensure that pyrotechnics were discharged a safe distance from the walls of the sound stage;

C.  Failing to ensure that no hazards remained from the use of the pyrotechnics before departing PC&E's sound stage on December 19, 2008, and

D.  Other breaches as discovery may reveal.

38.

Pursuant to its contract with PC&E, TBS was required to "indemnify and hold harmless the PC&E Parties including their agents and employees, from and against any claims or losses, including attorney's fees and expenses, resulting from any and all injuries to individuals and/or damages to property either caused in whole or in part by Customer Parties including their agents and employees."

39.

Defendant TBS has breached its contract with PC&E by failing to indemnify PC&E for the losses arising from the December 19, 2008, fire.

40.

As a direct, proximate, and foreseeable result of Defendant TBS's breach of contract, PC&E and Vigilant have sustained losses in the amount of $1,871,508.60.

## COUNT IV – TBS – ATTORNEYS FEES AND EXPENSES

41.

The terms and conditions governing TBS's use of PC&E's property also included the following provision: "Customer further agrees to indemnify and hold harmless the PC&E Parties including their agents and employees, from and against any claims for losses, including attorney's fees and expenses, resulting from any breach of this Agreement by Customer."

42.

Because of TBS's breaches of contract, as set forth in Count II above, PC&E and its subrogee Vigilant are entitled to recover the attorneys fees and expenses incurred in bring this action.

## COUNT V – HI-TECH – STRICT LIABILITY

43.

The employment by Defendant Hi-Tech of pyrotechnics within PC&E's sound stage constituted an abnormally and inherently dangerous activity.

11

44.

Defendant Hi-Tech's use of the pyrotechnics directly and proximately caused the fire in PC&E's sound stage and all resulting damages.

45.

Defendant Hi-Tech is strictly liable to PC&E and Vigilant for damages in the amount of $1,871,508.60 arising from its use of pyrotechnics in PC&E's sound stage.

## COUNT VI – HI-TEC – NEGLIGENCE

46.

Defendant Hi-Tech owed to PC&E the duty to use reasonable care while engaged in the inherently dangerous activity of employing pyrotechnics within PC&E's sound stage.

47.

Defendant Hi-Tech breached the duty it owed to PC&E in one or more of the following particulars:

A.     Failing to use reasonable care while employing pyrotechnics to ensure that no pyrotechnic material became lodged in the cellulose insulation of the sound stage;

B.     Failing to ensure that pyrotechnics were discharged a safe distance from the walls of the sound stage;

C.     Failing to use reasonable care to ensure that there were no remaining hazards associated with the use of the pyrotechnics before departing PC&E's sound stage; and

D.     Other acts or omissions as discovery may reveal.

48.

As a direct, proximate and foreseeable result of Defendant Hi-Tech's breach of duty and negligence, PC&E and Vigilant have suffered damages in the amount of $1,871,508.60.

## COUNT VII – HI-TEC – NEGLIGENCE PER SE

49.

The employment of indoor pyrotechnic displays within the State of Georgia is governed by National Fire Protection Association Publication 1126 ("NFPA 1126").

50.

NFPA 1126 has been adopted and modified as law by the Georgia Safety Fire Commissioner for the State of Georgia as part of Georgia's fire codes for the protection of life and property, including PC&E's property.

13

51.

Violations of NPFA 1126 in the employment of an indoor pyrotechnic display constitutes negligence per se.

52.

As a direct, proximate, and foreseeable result of Defendant Hi-Tec's negligence and negligence per se, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## COUNT VIII – HI-TECH – ATTORNEYS FEES

53.

The employment of indoor pyrotechnic displays within the State of Georgia is governed by NFPA 1126.

54.

NFPA 1126 has been adopted and modified as law by the Georgia Safety Fire Commissioner as part of Georgia's fire codes for the State of Georgia for the protection of life and property, including PC&E's property.

55.

Violations of NFPA 1126 in the employment of an indoor pyrotechnic display constitutes bad faith within the meaning of O.C.G.A. § 13-6-11.

56.

Violations of NFPA 1126, as adopted and modified by the State of Georgia, by Defendant Hi-Tech will entitle Plaintiff Vigilant to recovery of its attorneys fees and expenses incurred in bringing this action.

## COUNT IX – INTERIOR – NEGLIGENCE

57.

Defendant Interior owed to PC&E the duty to use reasonable care in conducting its inspection of PC&E's sprinkler system so as to avoid exposing PC&E to an unreasonable risk of harm to its property.

58.

Defendant Interior breached the duty it owed to PC&E in on or more of the following particulars:

A.      Failing to use reasonable care in inspecting PC&E's sprinkler system;

B.      Failing to detect the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage;

C.      Failing to report the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage; and

D.      Other acts or omissions as discovery may reveal.

15

59.

As a direct, proximate, and foreseeable result of Defendant Interior's breach of duty and negligence, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## **COUNT X – INTERIOR – BREACH OF CONTRACT**

60.

Defendant Interior carried out its work of inspecting PC&E's sprinkler system pursuant to an oral contract under which it would receive payment for its work.

61.

Pursuant to its contract with PC&E, Interior had the implied duty to perform its work in a good, professional, and workmanlike manner.

62.

Defendant Interior breached its implied duty to carry out its work in a good, professional, and workmanlike manner in one or more of the following particulars:

A.    Failing to inspect PC&E's sprinkler system in a good, professional, and workmanlike manner;

B.    Failing to detect the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage;

C.    Failing to report the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage; and

D.    Other breaches as discovery may reveal.

63.

As a direct, proximate, and foreseeable result of Defendant Interior's breach of contract, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## COUNT XI – INTERIOR – NEGLIGENCE PER SE

64.

Inspection of sprinkler systems within the State of Georgia is governed by National Fire Protection Association Publication 13A ("NFPA 13A").

65.

NFPA 13A has been adopted and modified as law by the Safety Fire Commissioner for the State of Georgia as part of Georgia's fire codes for the protection of life and property, including PC&E's property.

66.

Had Defendant Interior properly inspected PC&E's sprinkler system pursuant to NFPA 13A, it would have detected and reported the existence of the inoperable water flow switch installed on the pipe protecting PC&E's sound stage.

17

67.

Defendant Interior failed to comply with NFPA 13A while inspecting PC&E's sprinkler system, and as a consequence, failed to detect and report the inoperable water flow switch.

68.

Defendant Interior's failure to inspect PC&E's sprinkler system in accordance with NFPA 13A, constitutes negligence per se.

69.

As a direct, proximate, and foreseeable result of Defendant Interior's negligence per se, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## COUNT XII – INTERIOR – ATTORNEYS FEES AND EXPENSES

70.

Defendant Interior's failure to abide by NFPA 13A, adopted and modified as law by the Safety Fire Commissioner of the State of Georgia, while conducting its inspection of PC&E's sprinkler system constitutes bad faith within the meaning of O.C.G.A. § 13-6-11.

ATLANTA\166012\1

71.

Because of Defendant Interior's bad faith in violating a fire code promulgated for the protection of PC&E and its property, PC&E and Vigilant are entitled to recovery of their expenses of litigation and attorneys fees in this action.

WHEREFORE, Plaintiff prays:

A.   That summons and process issue and be served upon Defendants compelling them to appear and answer this Complaint;

B.   That Plaintiff have judgment against Defendants in an amount not less than $1,871,508.60, plus costs, interest, attorneys fees, and expenses as provided by law;

C.   That Plaintiff have trial by jury; and

D.   That Plaintiff have all other relief allowed by law and equity.

David M. Bessho
Georgia Bar No. 055784
Attorney for Plaintiff

Cozen O'Connor
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, Georgia 30308
Telephone: (404) 572-2000
Facsimile: (404) 572-2199
dbessho@cozen.com

19



# **I**nterior
### Fire Protection, Inc.

3700 Industrial Ct., Ste. F
Suwanee, GA 30024
Phone: 770-831-7978
Fax: 770-831-9592

## *INSPECTION REPORT NUMBER: AI08002*

**BUILDING NAME: PC & E**
**ADDRESS: 2235 DEFOOR HILLS RD - ATLANTA, GA 30318**
**INSPECTOR: MARVIN GRINDLE**
**DATE: JANUARY 2, 2008**

1. GENERAL - EXPLAIN ANY NO ANSWERS IN #18
A. Is the building occupied according to the information furnished
   by the owner or the owner's representative?                YES ☒  NO ☐  NA ☐
B. Is the occupancy same as previous inspection according to the
   information furnished by the owner or the owner's representative?  YES ☒  NO ☐  NA ☐
C. Are all systems in service?                                 YES ☒  NO ☐  NA ☐
D. Are all Fire Protection Systems same as last inspection according
   to the information furnished by the owner or the owner's
   representative?                                             YES ☒  NO ☐  NA ☐
E. Is the building completely sprinklered?                     YES ☒  NO ☐  NA ☐
F. Are all new additions and building changes properly protected
   according to the information furnished by the owner or the owner's
   representative?                                             YES ☒  NO ☐  NA ☐
G. Is all stock and storage properly below sprinkler piping?   YES ☒  NO ☐  NA ☐
H. Was property free from fires since last inspection according
   to the information furnished by the owner or the owner's
   representative?                                             YES ☒  NO ☐  NA ☐
   EXPLAIN ANY FIRES ON A SEPARATE SHEET
I. In areas protected by wet system: does the building appear to be
   properly heated in all areas, including blind attics, and perimeter areas;
   and are all exterior openings protected against entrance of cold air?  YES ☒  NO ☐  NA ☐

2. CONTROL VALVES - EXPLAIN ANY NO ANSWERS IN #18
A. Are all sprinkler system main control valves open?          YES ☒  NO ☐  NA ☐
B. Are all other valves in proper position?                    YES ☒  NO ☐  NA ☐
C. Are all control valves in good condition, sealed or supervised?  YES ☒  NO ☐  NA ☐

3. WATER SUPPLIES - EXPLAIN ANY NO ANSWERS IN #18
A. Was a water flow test made and the results satisfactory?    YES ☒  NO ☐  NA ☐

4. TANKS, PUMPS AND FIRE DEPARTMENT CONNECTIONS
   EXPLAIN ANY NO ANSWERS IN #18
A. Are fire pumps, gravity tanks, reservoirs, and/or pressure tanks in
   good condition and properly maintained?                     YES ☐  NO ☐  NA ☒
B. Are fire departments connections in satisfactory condition, couplings
   free, caps in place, and check valves tight?                YES ☒  NO ☐  NA ☐

**EXHIBIT**
**A**

WET SYSTEMS - EXPLAIN ANY NO ANSWERS IN #18

| | | | |
|---|---|---|---|
| A. Are cold weather valves open or closed as necessary? | YES ☐ | NO ☐ | NA ☒ |
| B. Have anti-freeze systems been tested and left in satisfactory condition? | YES ☐ | NO ☐ | NA ☒ |
| C. Are Alarm valves, water flow indicators, and retard chambers in satisfactory condition? | YES ☒ | NO ☐ | NA ☐ |

6. DRY SYSTEMS - EXPLAIN ANY NO ANSWERS IN #18

| | | | |
|---|---|---|---|
| A. Is dry valve in service and in good condition? | YES ☐ | NO ☐ | NA ☒ |
| B. Is air pressure and priming water level normal? | YES ☐ | NO ☐ | NA ☒ |
| C. Is air compressor in good condition? | YES ☐ | NO ☐ | NA ☒ |
| D. Were low points drained during Fall and Winter inspections? | YES ☐ | NO ☐ | NA ☒ |
| E. Are quick-opening devices in service? | YES ☐ | NO ☐ | NA ☒ |
| F. Have dry valves been trip-tested satisfactorily as required? | YES ☐ | NO ☐ | NA ☒ |
| G. Are dry valves adequately protected from freezing? | YES ☐ | NO ☐ | NA ☒ |
| H. Are valves house and heater condition satisfactory? | YES ☐ | NO ☐ | NA ☒ |

7. SPECIAL SYSTEMS - EXPLAIN ANY NO ANSWERS IN #18

| | | | |
|---|---|---|---|
| A. Were valves tested as required? | YES ☐ | NO ☐ | NA ☒ |
| B. Were all heat responsive systems tested and results satisfactory? | YES ☐ | NO ☐ | NA ☒ |
| C. Were supervisory features tested and results satisfactory? | YES ☐ | NO ☐ | NA ☒ |

8. ALARMS - EXPLAIN ANY NO ANSWERS IN #18

| | | | |
|---|---|---|---|
| A. Are water motor and gong test satisfactory? | YES ☒ | NO ☐ | NA ☐ |
| B. Is electric alarm test satisfactory? | YES ☒ | NO ☐ | NA ☐ |
| C. Is supervisory alarm service test satisfactory? | YES ☒ | NO ☐ | NA ☐ |

9. SPRINKLERS & PIPING - EXPLAIN ANY NO ANSWERS IN #18

| | | | |
|---|---|---|---|
| A. Are all sprinklers in good condition, no obstructed and free of corrosion or loading? | YES ☒ | NO ☐ | NA ☐ |
| B. Are all sprinklers less than 50 (fifty) years old? | YES ☒ | NO ☐ | NA ☐ |
| C. Are extra sprinklers readily available? | YES ☒ | NO ☐ | NA ☐ |
| D. Is condition of piping, drain valves, check valves, hanger, pressure gauges, open sprinklers, and strainers satisfactory? | YES ☒ | NO ☐ | NA ☐ |
| E. Have sprinklers been checked for poor temperature rating? | YES ☐ | NO ☐ | NA ☒ |
| F. Are portable fire extinguishers in good condition? | YES ☐ | NO ☐ | NA ☒ |
| G. Is hand hose on sprinkler systems satisfactory? | YES ☐ | NO ☐ | NA ☒ |

Date dry system piping last checked for stoppage: _____
. Date dry system piping last checked for proper pitch: _____
12. Date dry pipe valve last trip tested: _____
13. WET SYSTEMS: NUMBER: **2**        MAKE & MODEL: **AUTOMATIC MODEL 153; GRINNELL MODEL A**
14. DRY SYSTEMS: NUMBER: _____       MAKE & MODEL: _____
15. SPECIAL SYSTEMS: NUMBER: _____        TYPE: _____
    MAKE & MODEL: _____           CONDITION: _____

16. CONTROL VALVES - MARK YES OR NO IN SPACE PROVIDED
EXPLAIN ANY NO ANSWERS IN #18:

CITY CONNECTION CONTROL VALVE NUMBER:**2**        TYPE: **OS&Y WITH DOUBLE BACKFLOW**
OPEN: **YES**   SECURED: **YES**  CLOSED: **NO**   SIGNS: **YES**  CONDITION: **GOOD**
TANK CONTROL VALVE NUMBER: _____                 TYPE: _____
OPEN: _____   SECURED: _____  CLOSED: _____  SIGNS: _____  CONDITION: _____
PUMP CONTROL VALVE NUMBER:_____               TYPE: _____
OPEN: _____   SECURED: _____  CLOSED: _____  SIGNS: _____  CONDITION: _____
SECTIONAL CONTROL VALVE NUMBER: **1**              TYPE: **YARD PIV**
OPEN: **YES**   SECURED: **NO**  CLOSED: **NO**   SIGNS: **YES**  CONDITION: **GOOD**
SYSTEM CONTROL VALVE NUMBER: **2**                TYPE: **OS&Y**
OPEN: **YES**   SECURED: **YES**  CLOSED: **NO**   SIGNS: **YES**  CONDITION: **GOOD**

17. WATER FLOW TEST
WATER PRESSURE: CITY: **165**     PSI:       TANK: _____ PSI  FIRE PUMP: _____
WATER FLOW TEST: **YES**                        (IF NONE MADE, WHY?): _____
DRAIN TEST:
1. TEST PIPE LOCATION: **AT RISER**                    SIZE OF TEST PIPE:  **2"**
    PRESSURE BEFORE: **175**    PRESSURE AFTER: **150**       FLOW PRESSURE: **140**
2. TEST PIPE LOCATION: **AT RISER**                    SIZE OF TEST PIPE:  **2"**
    PRESSURE BEFORE: **175**    PRESSURE AFTER: **150**       FLOW PRESSURE: **140**
3. TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
4. TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
5. TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
6. TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
7. TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
8. TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
9. TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
10.TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____
11.TEST PIPE LOCATION: _____                       SIZE OF TEST PIPE: _____
    PRESSURE BEFORE: _____   PRESSURE AFTER: _____      FLOW PRESSURE: _____

EXPLANATION OF ANY "NO" ANSWERS:

19. RECENT CHANGES IN BUILDING OCCUPANCY OF FIRE PROTECTION EQUIPMENT:

20. ADJUSTMENT OR CORRECTIONS MADE:

21. DESIRABLE IMPROVEMENTS:
**YARD  PIV NEEDS HANDLE AND LOCK.**

**INSPECTORS NOTES:**

**HEADTYPES:**
**GRINNELL MODEL C 1964 BRASS UPRIGHT AND CHROME PENDENT**

COPY OF THIS REPORT SHOULD BE SENT TO:

| | |
|---|---|
| NAME: | **ALAN MARTIN / STEVE SONSINI** |
| COMPANY NAME: | **PC&E** |
| ADDRESS: | **2235 DEFOOR HILLS RD** |
| | **ATLANTA, GA 30318** |

| | |
|---|---|
| PHONE NUMBER: | **404-609-9001** |
| FAX: | **404-609-9926** |

**ADDITIONAL COPIES OF THIS REPORT PROVIDED TO:** _____

# TERMS AND CONDITIONS

**RENTAL RATES**

**OUT-OF-TOWN RENTALS**

**OUT-OF COUNTRY RENTALS**

**WAIVER**

**AVAILABILITY**

**INSURANCE**

**PAYMENT TERMS**

**DAMAGES TO AND LOSSES OF EQUIPMENT**

**REPOSSESSION OF EQUIPMENT**

**RESTRICTION AND RIGHT TO REMOVE**

**WARRANTY**

**BE RULED FOR FUELING PURPOSES**

**INDEMNIFICATION**

**GENERATORS AND VEHICLES**

**TAXES**

**SPECIAL OPENING**

**EXPENDABLES**

**DAMAGE AND/OR LOSS SECURITY FEE**

**MISCELLANEOUS**

**ACCEPTANCE AND USE OF ANY EQUIPMENT CONSTITUTES EXECUTION OF THIS AGREEMENT**

EXHIBIT

B