**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| VIGILANT INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION FILE |
| TURNER BROADCASTING | ) | |
| SYSTEM, INC., TURNER STUDIOS, | ) | NO. 1:10-CV-592-RLV |
| INC., HI-TECH FX LLC and | ) | |
| INTERIOR FIRE PROTECTION, INC., | ) | |
| | ) | |
| Defendants. | | |

## AMENDED COMPLAINT FOR PROPERTY DAMAGE AND DEMAND FOR JURY TRIAL

Plaintiff Vigilant Insurance Company ("Vigilant"), pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), files the following Amended Complaint stating claims against Turner Broadcasting System, Inc. ("TBS"), Turner Studios, Inc., ("Turner Studios"), Hi-Tech FX LLC ("Hi-Tech") and Interior Fire Protection, Inc. ("Interior"). This pleading is in response to the Answers to the original Complaint by Defendants TBS and Interior only, which were filed on April 9, 2010 and April 7, 2010, respectively; and amends Plaintiff's allegations with respect to those Defendants only.

## The Parties, Jurisdiction and Venue

1.

Plaintiff Vigilant is an insurance company lawfully doing business in the State of Georgia.  Vigilant is incorporated in New York and its principal place of business is in New Jersey.

2.

Defendant TBS is a Georgia corporation with its principal place of business in Georgia.  TBS may be served with process by service upon its registered agent: CT Corporation System, 1201 Peachtree Street, Atlanta, GA  30361.

3.

Turner Studios is a Georgia corporation with its principal place of business in Georgia.  Turner Studios may be served with process by service upon its registered agent:  CT Corporation System, 1201 Peachtree Street, NE., Atlanta, GA 30361.

4.

Defendant Hi-Tech is an Iowa corporation with its principal place of business in Iowa.  Hi-Tech may be served with process by service upon its registered agent:  Mark R. Johnson, 1135 Avenue I, Fort Madison, IA  52637.

2

5.

Interior is a Georgia corporation with its principal place of business in Georgia. Interior may be served with process by service upon its registered agent: Cheryl V. Shaw, 400 Northridge Road, Suite 700, Atlanta, GA 30350.

6.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## **Allegation of Facts**

8.

This case arises from a fire that occurred on or about December 19, 2008, at a movie production facility in the Atlanta area owned by Production Consultants, LLC, d/b/a Production Consultants & Equipment, or PC&E.

3

9.

Vigilant provided property insurance to PC&E and indemnified PC&E in the amount of $1,871,508.60 for its losses arising from the fire.

10.

The fire occurred in a PC&E sound stage being used by either Defendant TBS, Defendant Turner Studios, or both, on December 19, 2008, to film a "SpongeBob" production.  Defendants TBS and Turner Studios will be referred to collectively hereinafter as "the Turner Defendants."

11.

The Turner Defendants and their employees and contractors had exclusive possession, custody, and control of PC&E's sound stage during the filming of the SpongeBob production.

12.

The production called for the use of pyrotechnics to create a fireworks background for the production.

13.

The Turner Defendants hired Defendant Hi-Tech to create the pyrotechnic display.

4

14.

The Turner Defendants filmed the sequence involving the SpongeBob character and the pyrotechnic display on December 19, 2008, and left the facility sometime after 5:00 p.m.

15.

The Turner Defendants and their employees and contractors were the last persons to exit the sound stage on the evening of December 19, 2008.

16.

On Sunday morning, December 21, 2008, a PC&E employee remotely logged into the PC&E video surveillance system and saw smoke inside the facility.

17.

The employee immediately responded and found smoke in the PC&E facility, fire suppression sprinkler heads discharging water over the remains of an extinguished fire in the sound stage vacated by the Turner Defendants the previous Friday, and several inches of water throughout a significant portion of the facility.

18.

Although the local, mechanical water gong had activated, the electrical alarm system had not activated, and no alarm signal had been transmitted to PC&E's alarm service.  As a consequence, the sprinklers had run for an extended

period of time after extinguishing the fire, causing extensive water damage to PC&E's facilities, equipment, and business.

19.

The electrical alarm did not activate because the water flow switch on the sprinkler pipe serving the sound stage was inoperable.  Because of its inoperable condition, it did not transmit a signal to PC&E's central alarm panel when water flowed through the pipe to the sprinkler heads in the sound stage.

20.

The last annual inspection of PC&E's sprinkler system was conducted by Defendant Interior, on January 2, 2008.  At the time of its January 2, 2008, inspection, Interior provided a written report to PC&E showing that the entire sprinkler system, including its water flow switches, was in good condition with no deficiencies.

21.

A true and correct copy of Interior's January 2, 2008, report of its inspection of PC&E's sprinkler system is attached to this Complaint as Exhibit "A."

22.

Vigilant's investigation determined that the fire was caused when material ejected from the pyrotechnics used by Defendant Hi-Tech became lodged in the sound deadening cellulose insulation covering the walls of the sound stage.

23.

The fire smoldered under the cellulose insulation for an undetermined time, but at least for several hours, before breaking into open flame.

24.

Once the fire broke into open flame, it was extinguished by the automatic fire protection sprinkler system in the sound stage.

25.

The activation of the sprinkler system should have immediately activated the electrical fire alarm system installed on PC&E's premises.

26.

Because of the inoperable condition of the water flow switch installed on the sprinkler pipe protecting the sound stage, the electrical alarm did not activate.

27.

Because Defendant Interior failed to detect the inoperable condition of the water flow switch during its last inspection, PC&E was unaware that its alarm would not activate as intended when the sprinkler system activated.

28.

Because of the lack of an alarm signal, the sprinkler system continued to discharge water for an extended period of time after extinguishing the fire in the sound stage.  As a result, PC&E suffered extensive water damage, in addition to the damage caused by fire and smoke.

29.

Vigilant has indemnified its insured PC&E for its damages arising from this incident and is subrogated to all rights of actions against those parties responsible for its losses, to the extent of its indemnification.

**COUNT I – THE TURNER DEFENDANTS – STRICT LIABILITY**

30.

The employment by the Turner Defendants of pyrotechnics within PC&E's sound stage constituted an abnormally and inherently dangerous activity.

8

31.

The Turner Defendants' use of the pyrotechnics directly and proximately caused the fire in PC&E's sound stage and all resulting damages.

32.

The Turner Defendants are strictly liable to PC&E and Vigilant for damages in the amount of $1,871,508.60 arising from their use of pyrotechnics in PC&E's sound stage.

## COUNT II – THE TURNER DEFENDANTS – NEGLIGENCE

33.

The Turner Defendants owed to PC&E the duty to use reasonable care in their use of PC&E's sound stage in order to avoid creating an unreasonable risk of harm to PC&E.

34.

The Turner Defendants breached the duty they owed to PC&E in one or more of the following particulars:

A.   Failing to use reasonable care while engaged in the inherently dangerous activity of employing pyrotechnics inside PC&E's sound stage;

9

B.     Failing to ensure that pyrotechnics were discharged a safe distance from the walls of the sound stage;

C.     Failing to ensure that no hazards remained from the use of the pyrotechnics before departing PC&E's sound stage on December 19, 2008; and

D.     Other acts or omissions as discovery may reveal.

35.

As a direct, proximate, and foreseeable result of the Turner Defendants' breach of duty and negligence, PC&E and Vigilant have suffered damages in the amount of $1,871,508.60.

## COUNT III – THE TURNER DEFENDANTS – BREACH OF CONTRACT

36.

The Turner Defendants used PC&E's sound stage pursuant to a contract governed by written terms and conditions provided to the Turner Defendants prior to their use of the sound stage.   A true and correct copy of those terms and conditions is attached hereto as Exhibit "B."

37.

The contract between PC&E and the Turner Defendants imposed upon the Turner Defendants the implied duty to perform their part of the contract in a good, professional, workmanlike, and non-negligent manner.

38.

The Turner Defendants breached their implied duties under the contract by:

A.      Employing pyrotechnics in an unsafe manner within PC&E's sound stage;

B.      Failing to ensure that pyrotechnics were discharged a safe distance from the walls of the sound stage;

C.      Failing to ensure that no hazards remained from the use of the pyrotechnics before departing PC&E's sound stage on December 19, 2008, and

D.      Other breaches as discovery may reveal.

39.

Pursuant to their contract with PC&E, the Turner Defendants were required to "indemnify and hold harmless the PC&E Parties including their agents and employees, from and against any claims or losses, including attorney's fees and expenses, resulting from any and all injuries to individuals and/or damages to

11

property either caused in whole or in part by Customer Parties including their agents and employees."

40.

The Turner Defendants breached their contract with PC&E by failing to indemnify PC&E for the losses arising from the December 19, 2008, fire.

41.

As a direct, proximate, and foreseeable result of the Turner Defendants' breach of contract, PC&E and Vigilant have sustained losses in the amount of $1,871,508.60.

**COUNT IV – THE TURNER DEFENDANTS
ATTORNEYS FEES AND EXPENSES**

42.

The terms and conditions governing the Turner Defendants' use of PC&E's property also included the following provision:  "Customer further agrees to indemnify and hold harmless the PC&E Parties including their agents and employees, from and against any claims for losses, including attorney's fees and expenses, resulting from any breach of this Agreement by Customer."

12

43.

Because of the Turner Defendants' breaches of contract, as set forth in Count II above, PC&E and its subrogee Vigilant are entitled to recover the attorneys fees and expenses incurred in bring this action.

## COUNT V – HI-TECH – STRICT LIABILITY

44.

The employment by Defendant Hi-Tech of pyrotechnics within PC&E's sound stage constituted an abnormally and inherently dangerous activity.

45.

Defendant Hi-Tech's use of the pyrotechnics directly and proximately caused the fire in PC&E's sound stage and all resulting damages.

46.

Defendant Hi-Tech is strictly liable to PC&E and Vigilant for damages in the amount of $1,871,508.60 arising from its use of pyrotechnics in PC&E's sound stage.

ATLANTA\178492\1

## COUNT VI – HI-TEC – NEGLIGENCE

47.

Defendant Hi-Tech owed to PC&E the duty to use reasonable care while engaged in the inherently dangerous activity of employing pyrotechnics within PC&E's sound stage.

48.

Defendant Hi-Tech breached the duty it owed to PC&E in one or more of the following particulars:

A.   Failing to use reasonable care while employing pyrotechnics to ensure that no pyrotechnic material became lodged in the cellulose insulation of the sound stage;

B.   Failing to ensure that pyrotechnics were discharged a safe distance from the walls of the sound stage;

C.   Failing to use reasonable care to ensure that there were no remaining hazards associated with the use of the pyrotechnics before departing PC&E's sound stage; and

D.   Other acts or omissions as discovery may reveal.

49.

As a direct, proximate and foreseeable result of Defendant Hi-Tech's breach of duty and negligence, PC&E and Vigilant have suffered damages in the amount of $1,871,508.60.

## COUNT VII – HI-TEC – NEGLIGENCE PER SE

50.

The employment of indoor pyrotechnic displays within the State of Georgia is governed by National Fire Protection Association Publication 1126 ("NFPA 1126").

51.

NFPA 1126 has been adopted and modified as law by the Georgia Safety Fire Commissioner for the State of Georgia as part of Georgia's fire codes for the protection of life and property, including PC&E's property.

52.

Violations of NPFA 1126 in the employment of an indoor pyrotechnic display constitutes negligence per se.

15

53.

As a direct, proximate, and foreseeable result of Defendant Hi-Tec's negligence and negligence per se, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## COUNT VIII – HI-TECH – ATTORNEYS FEES

54.

The employment of indoor pyrotechnic displays within the State of Georgia is governed by NFPA 1126.

55.

NFPA 1126 has been adopted and modified as law by the Georgia Safety Fire Commissioner as part of Georgia's fire codes for the State of Georgia for the protection of life and property, including PC&E's property.

56.

Violations of NFPA 1126 in the employment of an indoor pyrotechnic display constitutes bad faith within the meaning of O.C.G.A. § 13-6-11.

57.

Violations of NFPA 1126, as adopted and modified by the State of Georgia, by Defendant Hi-Tech will entitle Plaintiff Vigilant to recovery of its attorneys fees and expenses incurred in bringing this action.

## COUNT IX – INTERIOR – NEGLIGENCE

58.

Defendant Interior owed to PC&E the duty to use reasonable care in conducting its inspection of PC&E's sprinkler system so as to avoid exposing PC&E to an unreasonable risk of harm to its property.

59.

Defendant Interior breached the duty it owed to PC&E in on or more of the following particulars:

A.   Failing to use reasonable care in inspecting PC&E's sprinkler system;

B.   Failing to detect the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage;

C.   Failing to report the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage; and

D.   Other acts or omissions as discovery may reveal.

60.

As a direct, proximate, and foreseeable result of Defendant Interior's breach of duty and negligence, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## <u>COUNT X – INTERIOR – BREACH OF CONTRACT</u>

### 61.

Defendant Interior carried out its work of inspecting PC&E's sprinkler system pursuant to an oral contract under which it would receive payment for its work.

### 62.

Pursuant to its contract with PC&E, Interior had the implied duty to perform its work in a good, professional, and workmanlike manner.

### 63.

Defendant Interior breached its implied duty to carry out its work in a good, professional, and workmanlike manner in one or more of the following particulars:

A.    Failing to inspect PC&E's sprinkler system in a good, professional, and workmanlike manner;

B.    Failing to detect the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage;

C.    Failing to report the existence of an inoperable water flow switch installed on the sprinkler pipe protecting the sound stage; and

D.    Other breaches as discovery may reveal.

64.

As a direct, proximate, and foreseeable result of Defendant Interior's breach of contract, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## COUNT XI – INTERIOR – NEGLIGENCE PER SE

65.

Inspection of sprinkler systems within the State of Georgia is governed by National Fire Protection Association Publication 25 ("NFPA 25").

66.

NFPA 25 has been adopted and modified as law by the Safety Fire Commissioner for the State of Georgia as part of Georgia's fire codes for the protection of life and property, including PC&E's property.

67.

Had Defendant Interior properly inspected PC&E's sprinkler system pursuant to NFPA 25, it would have detected and reported the existence of the inoperable water flow switch installed on the pipe protecting PC&E's sound stage.

68.

Defendant Interior failed to comply with NFPA 25 while inspecting PC&E's sprinkler system, and as a consequence, failed to detect and report the inoperable water flow switch.

69.

Defendant Interior's failure to inspect PC&E's sprinkler system in accordance with NFPA 25, constitutes negligence per se.

70.

As a direct, proximate, and foreseeable result of Defendant Interior's negligence per se, PC&E and Vigilant have been injured in the amount of $1,871,508.60.

## COUNT XII – INTERIOR – ATTORNEYS FEES AND EXPENSES

71.

Defendant Interior's failure to abide by NFPA 25, adopted and modified as law by the Safety Fire Commissioner of the State of Georgia, while conducting its inspection of PC&E's sprinkler system constitutes bad faith within the meaning of O.C.G.A. § 13-6-11.

72.

Because of Defendant Interior's bad faith in violating a fire code promulgated for the protection of PC&E and its property, PC&E and Vigilant are entitled to recovery of their expenses of litigation and attorneys fees in this action.

WHEREFORE, Plaintiff prays:

A.    That summons and process issue and be served upon Defendants compelling them to appear and answer this Complaint;

B.    That Plaintiff have judgment against Defendants in an amount not less than $1,871,508.60, plus costs, interest, attorneys fees, and expenses as provided by law;

C.    That Plaintiff have trial by jury; and

D.    That Plaintiff have all other relief allowed by law and equity.


s/David M. Bessho_____
David M. Bessho
Georgia Bar No. 055784
Counsel for Plaintiff

Cozen O'Connor
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, Georgia  30308
(404) 572-2000
(404) 572-2199 (facsimile)
dbessho@cozen.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| VIGILANT INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION FILE |
| TURNER BROADCASTING | ) | |
| SYSTEM, INC., HI-TECH FX LLC and | ) | NO. 1:10-CV-592-RLV |
| INTERIOR FIRE PROTECTION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he has served a copy of the foregoing **Amended Complaint for Property Damage and Demand for Jury Trial** upon counsel, via this Court's electronic filing system, as follows:

Howard M. Lessinger
McLain & Merritt
3445 Peachtree Road, N.E.
Suite 500
Atlanta, GA 30326

Wade K. Copeland
Lee P. Gutschenritter
Carlock Copeland Semler & Stair
P.O. Box 56887
Atlanta , GA 30343-0887

Daniel S. Reinhardt
Troutman Sanders LLP
5200 Bank of America Plaza
600 Peachtree Street
Atlanta GA 30308

This 20th day of April, 2010.

s/David M. Bessho
David M. Bessho

ATLANTA\178492\1